# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

|  |  |
|---|---|
| HANNAH LOWE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:20-cv-01866-SGC |
| SOCIAL SECURITY ADMINISTRATION, Commissioner, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

The plaintiff, Hannah Lowe, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Supplemental Security Income ("SSI"). (Doc. 1).[2] Lowe timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3). For the reasons discussed below, the Commissioner's decision is due to be affirmed.

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 10).

[2] Citations to the record in this case refer to the document and page numbers assigned by the court's CM/ECF document management system and appear in the following format: (Doc. __ at __). Citations to the administrative record refer to the page numbers assigned by the Commissioner and appear in the following format: (Tr. at __).

## I. Background

### A. Statutory and Regulatory Framework

To establish eligibility for disability benefits through SSI, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a). A claimant becomes eligible for SSI benefits in the first month where she is both disabled and has an SSI application on file. 20 C.F.R. § 416.202–03; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The Social Security Administration ("SSA") follows a five-step analysis to determine whether an individual is eligible for disability benefits:

1. The Commissioner determines whether the claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled; otherwise, the Commissioner proceeds to the second step.

2. The Commissioner then determines whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. If there is no severe impairment, the claimant is not disabled; otherwise, the Commissioner proceeds to the third step.

3. Next, the Commissioner determines whether the Step 2 impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, the claimant is disabled and the claim is granted; otherwise, the Commissioner determines the claimant's residual functional capacity ("RFC") and then proceeds to the fourth step.

4. The Commissioner then compares the claimant's RFC with the mental and

    physical demands of the claimant's past relevant work. If the claimant can perform past relevant work, the claimant is not disabled; otherwise, the Commissioner proceeds to the final step.

5. At the fifth step, the Commissioner determines whether the claimant can perform any other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. If so, the claimant is not disabled, and the claim is denied. If not, the claimant is disabled, and the claim is granted.

*See* 20 C.F.R. §§ 416.920(a), 416.920(b) (Step 1); 20 C.F.R. § 416.920(c) (Step 2); 20 C.F.R. §§ 416.920(d), 416.925, 416.926 (Step 3); 20 C.F.R. § 416.920(e-f) (Step 4); 20 C.F.R. § 416.920(g) (Step 5).

### B. Lowe's Alleged Disability and Medical Evidence

Lowe was 25 years old when she applied for SSI. (Tr. at 61). She graduated from high school, but she has never tried to work. (*Id.* at 61, 77). She was diagnosed in 2013 with bipolar disorder and anxiety. (*Id.* at 430). Although she has attempted to obtain a driver's license, she did not pass the driver's test and does not drive. (*Id.* at 88). She claims to suffer from anger outbursts, crying spells, racing thoughts, and mood swings. (*Id.* at 76, 78, 85). She can participate in social media, watch television, and listen to music. (*Id.* at 80-81).

Lowe applied for SSI in August 2018,[3] claiming she became disabled on December 1, 2013, due to bipolar disorder and depression. (*Id.* at 237). Relevant to the issues in this appeal, the following medical evidence was submitted:

---

[3] This is Lowe's second application for disability benefits. (Tr. at 234).

Dr. M. Elizabeth Lachman, a psychiatrist who began treating Lowe in September 2017, provided a "Comprehensive Psychiatric Evaluation and Summary of Chart" dated October 3, 2018.[4] (*Id.* at 340-41). Dr. Lachman diagnosed Lowe with Bipolar II Disorder, Anxiety Disorder Unspecified, and Complicated Bereavement, which caused "clinically significant distress and impairment in personal, social, occupational and other important areas of function." (*Id.*). According to Dr. Lachman, Lowe's psychiatric symptoms caused a marked, severe, and sometimes extreme degree of impairment in all areas related to occupational functioning. (*Id.* at 341). Dr. Lachman opined Lowe (1) lacked the concentration, persistence, and pace to safely function in the workplace; (2) could neither work in any occupational setting nor complete even a four-hour workday; and (3) was unable to perform routine work, work appropriately with colleagues, take orders from supervisors, follow simple directions, adapt to change in work routine or environment, or interact appropriately with the public. (*Id.*).

Dr. Jack L. Bentley, Jr., a consultive examiner, evaluated Lowe in January 2019. (*Id.* at 346-48). At her examination, Lowe was alert and oriented with an unremarkable appearance. (*Id.* at 347). Lowe reported she performs simple household chores with prompting and completes her daily living activities without

---

[4] Dr. Lachman's treatment notes are not part of the administrative record, and it appears she did not submit any treatment records with her opinions.

4

assistance. (*Id.*). While her medical records indicated a bipolar disorder diagnosis, Dr. Bentley diagnosed Lowe with attention deficit hyperactivity disorder ("ADHD"), probable neurodevelopmental disorder, mild; and impulse disorder, mild. (*Id.*). Dr. Bentley thought Lowe could neither maintain effective communication with coworkers and supervisors nor sustain simple work-related activities in a timely manner. (*Id.* at 348).

Dr. Peter Sims, the non-examining state agency psychiatrist, opined that Lowe had mild limitations in interacting with others and remembering information and moderate limitations in (1) learning information, (2) maintaining concentration, persistence, and pace, and (3) adapting to change and managing herself. (*Id.* at 141-42). Dr. Sims noted both Dr. Lachman and Dr. Bentley described extreme symptoms that were not documented in the medical records, and he also noted he would expect to see treatment notes to support Dr. Lachman's conclusion that Lowe is severely impaired. (*Id.* at 134-40).

In May 2019, Dr. Lachman submitted a "Mental Health Source Statement," a one-page form of yes/no questions. (*Id.* at 431). In her opinion, Lowe (1) could understand, remember, and/or carry out very short and simple instructions, (2) could not maintain attention, concentration and/or pace for at least two hours, (3) could not perform activities within a schedule and be punctual within customary tolerances, (4) could not sustain an ordinary routine without special supervision, (5) could not

5

adjust to routine and infrequent work changes, (6) could not interact with supervisors and/or co-workers, (7) could maintain minimally socially appropriate behavior and adhere to basic standards of neatness and cleanliness, (8) would be off-task 95-98% of an 8-hour day, and (9) would miss 28-30 days of work each month. (*Id.*). Dr. Lachman's third opinion was submitted on the same form as, and substantially identical to, her second statement except she reported Lowe (1) could not maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, (2) would be off-task 95% of an 8-hour day, and (3) would miss 25 days of work each month. (*Id.* at 474).

### C. Lowe's Disability Application and the ALJ's Decision

Lowe's application for SSI was denied, and she requested a hearing before an ALJ. (*Id.* at 53). Following a January 2020 hearing, the ALJ denied Lowe's claim. (*Id.* at 63). At the first step, the ALJ found Lowe did not engage in substantial gainful activity after August 27, 2018, the date she applied for SSI. (*Id.* at 55). At the second step, the ALJ determined Lowe had the following severe impairments: depression, anxiety, panic disorder, ADHD, specific learning disorder, and impulse control disorder. (*Id.*). At the third step, the ALJ determined Lowe does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings. (*Id.* at 56).

Before proceeding to the fourth step, the ALJ found Lowe's impairments could reasonably be expected to cause her alleged symptoms but her statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.* at 60). The ALJ determined Lowe had the following RFC:

> [Lowe can] perform a full range of work at all exertional levels but with the following nonexertional limitations: can understand, remember, and carry out simple 1-2 step instructions; can maintain attention and concentration for 2-hour periods at a time; no interaction with the general public; no more than frequent interaction with coworkers; the claimant can adapt to routine and infrequent workplace changes; can make simple work related decisions; she is limited to jobs that do not require a rapid production rate or pace; and no commercial driving.

(*Id.* at 59). The ALJ found Dr. Lachman's opinions unpersuasive because they were inconsistent and unsupported. (*Id.* at 60). Dr. Lachman did not submit treatment records to support her medical source statement, instead providing a summary and her opinions. (*Id.*). Her opinions also conflicted with treatment records reflecting Lowe was making progress with her treatment and showing her symptoms were only moderately severe. (*Id.* at 60-61). The ALJ further found Dr. Lachman's opinions conflicted with findings that Lowe had adequate concentration and memory, that she can shop in stores and operate her phone, and that she is independent with daily living activities. (*Id.* at 61).

The ALJ found Dr. Bentley's opinions unpersuasive because they appeared to be based primarily on Dr. Lachman's opinions and were not supported by treatment

records. (*Id.*). Dr. Sims's opinion that Lowe was only moderately limited was somewhat persuasive because it was consistent with treatment records showing progress, moderate symptoms, and Lowe's report that she was independent in her daily living activities. (*Id.*).

At the fourth step, the ALJ found Lowe had no past relevant work. (*Id.* at 61). Proceeding to the final step, the ALJ concluded Lowe was a younger individual with at least a high school education and the ability to communicate in English. (*Id.*). Transferability of job skills was not an issue because Lowe had no past relevant work. (*Id.*). Finally, the ALJ concluded that based on Lowe's RFC, there were a significant number of jobs in the national economy she could perform, including hand packager, crate liner, and laundry laborer. (*Id.* at 62). Based on this evidence, the ALJ ultimately concluded Lowe was not disabled since the date she filed her application and therefore was not entitled to benefits. (*Id.*).

### D. The Appeals Council's Review

After the ALJ denied her claim for benefits, Lowe sought review at the Appeals Council. During this period, Dr. Lachman submitted a fourth report, dated May 20, 2020, in which she opined Lowe lacked the capacity to (1) reason and make judgments and decisions and to have an opinion regarding her personal, business, and health care affairs (although Lowe did have an opinion); (2) manage her personal, business, and health care affairs voluntarily and without coercion; (3)

understand the ramifications of managing her personal, business, and health care affairs; and (4) manage her personal, business, and health care affairs safely and appropriately. (*Id.* at 42). Dr. Lachman did not cite her records or offer any support for her opinions.

Also in May 2020, Dr. June Nichols, a licensed psychologist, examined Lowe and reviewed her medical history. (*Id.* at 43-49). At the examination, Lowe presented as neat and clean, with good eye contact and clear speech. (*Id.* at 46). Her mood and thought processes were within normal limits, her affect was appropriate, and there was no evidence of confusion, loose association, or flight of ideas. (*Id.* at 46-47). Her stream of consciousness was clear. (*Id.* at 47). Dr. Nichols noted largely unremarkable findings on examination and opined Lowe (1) would be unable to maintain attention, concentration, or pace for at least two hours; (2) would be unable to perform activities within a schedule and be punctual; (3) would be unable to interact with supervisors and coworkers; (4) would be unable to adhere to basic standards of neatness and cleanliness; (5) would be off task 60% of an 8 hour day, and (6) would be absent 4-7 days in a 30 day period. (*Id.* at 49). Dr. Nichols also submitted a "Mental Health Source Statement" dated June 2, 2020, on what appears to be the same form as Dr. Lachman's May 2019 and January 2020 statements. This opinion was substantively identical to Dr. Lachman's January 2020 opinion, except

Dr. Nichols thought Lowe would be off-task 60% of an 8-hour day and would miss 4-7 days of work each month. (*Id.* at 36).

Lowe submitted Dr. Lachman's and Dr. Nichols's additional medical source statements to the Appeals Council, which did not consider these additional statements because it concluded this evidence did not show a reasonable probability of changing the outcome of the ALJ's decision. (*Id.* at 2). Lowe also submitted an Order from the Probate Court of Dekalb County, Alabama, dated July 20, 2020, finding Lowe was incapacitated and appointing her father as her guardian and conservator. (*Id.* at 11-12). The Appeals Council found the order was not chronologically relevant and so did not consider it. (*Id.* at 2). The Appeals Council therefore denied review of the ALJ's decision, and that decision became the final decision of the Commissioner. (*Id.* at 1-4); *see Fry v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Lowe filed this action. (Doc. 1).

## II. Standard of Review

A court's role in reviewing claims brought under the Social Security Act is narrow. Its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d

1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but closely scrutinizes the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

### III. Analysis

Lowe brings three substantive challenges on appeal. First, she argues the Appeal Council erred in concluding Dr. Nichols's and Dr. Lachman's opinions would not change the outcome of the decision. Next, she claims the ALJ improperly discounted Dr. Bentley's opinion. Finally, she contends the ALJ improperly disregarded Dr. Bentley's and Dr. Lachman's opinions about Lowe's limitations in the colloquy with the vocational expert ("VE").

### A. The Appeals Council did not err in denying review.

Generally, a claimant may present evidence at every stage of the administrative process. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015). The Appeals Council must consider evidence a claimant presents if it is new, material, chronologically relevant, and there is a reasonable

probability it would change the outcome of the decision. *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1063 (11th Cir. 2021); 20 C.F.R. § 416.1470(a)(5). Because the Appeals Council's refusal to consider new evidence is a legal decision subject to *de novo* review, the court should closely scrutinize that decision. *See Washington*, 806 F.3d at 1320–21; *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260, 1262 (11th Cir. 2007). If the Appeals Council errs in refusing to consider additional evidence, it commits legal error, and remand is appropriate.[5] *Pupo*, 17 F.4th at 1063.

Citing both *Washington* and *Pupo*, Lowe argues the Appeals Council should have considered the additional evidence she submitted after the ALJ's decision. In both cases, the Eleventh Circuit reversed and remanded the Appeals Council's failure to consider new, material, and chronologically relevant evidence. In *Washington*, the claimant submitted to the Appeals Council a new medical statement that contradicted another medical opinion considered by the ALJ. 806 F.3d at 1318. The new evidence was also supported by Washington's treatment notes. *Id.* at 1322. Accordingly, the court found a reasonable factfinder could credit the new evidence

---

[5] This is different than the court's review when the Appeals Council considers new evidence and, after consideration, denies review. *Popham v. Acting Comm'r of Soc. Sec.*, 681 F. App'x 754, 757–59 (11th Cir. 2017). In those cases, the court determines "whether t[he] new evidence renders the denial of benefits erroneous." *Id.* However, where, as here, the Appeals Council refused to consider the new evidence, the only question for the court is whether the Appeals Council should have considered the evidence. *See Green v. Saul*, No. 4:20-CV-00102-AKK, 2021 WL 1117757, at *1 (N.D. Ala. Mar. 24, 2021).

over the old, and so there was a reasonable possibility[6] the new evidence would change the ALJ's decision. *Id.* In *Pupo*, the claimant submitted evidence that she had surgery to address one of her allegedly disabling conditions (urinary incontinence) only a few days before the ALJ issued his decision. 17 F.4th at 1059, 1063. The ALJ had not considered the incontinence to be a severe impairment, at least in part because Pupo had never been hospitalized. *Id.* at 1063. Because that was no longer true, the court held the new evidence of surgery had a reasonable probability of changing the outcome of the ALJ's decision and so the Appeals Council erred in failing to consider it. *Id.*

Here, however, Lowe does not explain why Dr. Nichols's and Dr. Lachman's opinions have a reasonable probability of changing the ALJ's decision. Instead, she cites the treating source rule, apparently faulting the Appeals Council for failing to give deference to Dr. Lachman's opinion. Lowe applied for benefits after March 27, 2017, and so the treating source rule does not apply. *See* 20 C.F.R. § 416.920c. Specifically, the new regulations state the Commissioner need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s). . ., including those from [the claimant's own] medical sources." *See id.* at § 416.920c(a).

---

[6] As discussed below, the standard has since changed to that of a reasonable "probability."

Lowe also argues the Appeals Council should have considered whether it was reasonably *possible*, instead of *probable*, the additional evidence would change the ALJ's opinion. (Doc. 17 at 26). Like her claims about the treating source rule, this argument is unpersuasive because the relevant regulations have been revised. Effective January 17, 2017, the Commissioner revised 20 C.F.R. § 416.1470(a)(5) to require that new evidence must demonstrate a "reasonable probability" of changing the outcome of the ALJ's decision. *See* Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process, 81 FR 90987-01. Thus, the Appeals Council applied the correct legal standard in effect on the date of Lowe's appeal.

Like her prior opinions, Dr. Lachman's fourth statement was unaccompanied, and therefore unsupported, by her treatment records. Instead, she simply asserts Lowe is incapable of managing herself or her affairs. Importantly, in this final opinion, Dr. Lachman does not offer any findings regarding Lowe's ability to manage herself in a workplace, maintain pace or concentration, or interact with the public or supervisors. Instead, it appears this opinion is directed to the question of a potential guardianship that postdates the ALJ's decision. Because Dr. Lachman's May 2020 opinion suffers from the same deficiencies as her prior opinions, the court cannot conclude there is a reasonable probability it would change the ALJ's decision.

Lowe has also failed to show it is reasonably probable Dr. Nichols's opinion would change the outcome of the ALJ's decision. Dr. Nichols's opinion appears to be based, in large part, on Lowe's history of treatment, and thus, it appears this evidence is cumulative rather than new. *See, e.g., Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986). Like Dr. Lachman's deficient opinion, the extremely limited capabilities Dr. Nichols identified are not supported by the medical records or her examination of Lowe. For example, Dr. Nichols opined Lowe cannot interact with the public, but Lowe reported to Dr. Nichols that she was twice elected most popular in high school and liked people. Dr. Nichols stated Lowe cannot interact with supervisors, but her records do not otherwise reference issues with authority figures. While Lowe's treatment records certainly reflect a longstanding family conflict with an aunt and some cousins, there is no mention of ongoing or repeated conflict outside her family. Similarly, the records state Lowe has anger outbursts, but these episodes are not further described. Additionally, Dr. Lowe opined Lowe would be off task 60% of a workday, but neither the treatment records nor Dr. Lowe's examination provide any support for this determination or otherwise explain how Dr. Lowe arrived at this conclusion.

Because Lowe's application was filed after the new regulations changed the treating source rule, the Appeals Council was not required to give any particular deference to Dr. Lachman's opinion. Additionally, Lowe has not demonstrated there

is a reasonable probability the additional evidence she submitted to the Appeals Council would change the ALJ's decision. Consequently, the Appeals Council did not err in declining to consider the additional evidence Lowe submitted.

## B. The ALJ did not err in discounting Dr. Bentley's opinion.

The ALJ found Dr. Bentley's opinion was not persuasive because it appeared to be based primarily on Dr. Lachman's opinions and was not supported by the treatment records. Lowe objects to this conclusion, arguing the ALJ seeks to impeach the testimony of its own expert witness and citing an Alabama state court opinion, *Cone v. Ragan*, 261 So. 2d 28 (Ala. 1972). Lowe, however, cites no federal decision holding an ALJ may not discount the testimony of a consulting examiner. As set forth above, the new regulations state that an ALJ will not defer to any particular medical opinion but will instead consider the supportability and consistency of a medical opinion in determining how much weight to give the opinion. 20 C.F.R. § 416.920c.

Lowe encourages the court to consider *Wilder v. Chater*, where the Seventh Circuit reversed the ALJ's decision because he rejected the only mental health expert who opined on the claimant's condition. 64 F.3d 335 (7th Cir. 1995). Lowe contends *Wilder* holds an ALJ commits error by ignoring a consultive examiner's report, but that is not quite the case. In *Wilder*, the claimant quit her job as a security guard after winning the lottery in 1986. *Id.* at 336. Four years later, she applied for disability

16

insurance benefits, alleging she became disabled in 1986 due to depression. *Id.* The ALJ appointed a psychiatrist to evaluate Wilder, and that psychiatrist determined Wilder was disabled by the end of 1986 (a dispositive issue in the case was the date of onset). *Id.* The ALJ rejected the psychiatrist's opinion because Wilder's medical records did not mention depression or other mental illness, she had been permitted to adopt her grandson in the intervening period, and the records referred to her having "retired" from her job. *Id.* The record contained no other medical evidence about Wilder's mental health.

The Seventh Circuit was suspicious of the ALJ's decision to discount the only uncontradicted medical evidence of the onset date of Wilder's mental condition, particularly because that opinion was given by a psychiatrist retained by the ALJ, rather than Wilder. *Id.* at 337. The court found this unreasonable and reversed and remanded the ALJ's decision for further consideration. *Id.* at 338.

Unlike in *Wilder*, the ALJ here did not discount the only medical evidence regarding Lowe's mental health. Instead, she found somewhat persuasive Dr. Sims's opinion that Lowe's impairments were, at most, moderately severe. The Eleventh Circuit has concluded *Wilder* is not applicable to cases where there are multiple opinions about the relevant issue. *See Arnold v. Soc. Sec. Admin., Comm'r*, 724 F. App'x 772, 779 (11th Cir. 2018); *Jackson v. Soc. Sec. Admin., Comm'r*, 779 F.

App'x 681 (11th Cir. 2019) (finding *Wilder* inapplicable where the ALJ did not reject the only medical evidence regarding the claimant's impairments).

The ALJ clearly articulated her reasons for discounting Dr. Bentley's opinion. Because Dr. Sims opined that Lowe had, at most, moderate limitations in her mental functioning, substantial evidence supported the ALJ's conclusion.

### C. The ALJ's colloquy with the VE constitutes substantial evidence.

Finally, Lowe contends the ALJ's decision was not based on substantial evidence because she did not include the limitations suggested by Dr. Bentley and Dr. Lachman when questioning the VE. In making this argument, however, Lowe does not specify which mental limitations the ALJ omitted from the hypothetical. The court has already concluded the ALJ did not err in discounting Dr. Bentley's opinion. Similarly, the ALJ did not err in discounting Dr. Lachman's opinion as unsupported and inconsistent. Dr. Lachman did not submit treatment notes detailing the course of Lowe's treatments, the frequency of her visits, or any specific signs or illustrative events that support her opinion that Lowe is severely impaired. Lowe suggests the records of the CED Mental Health Center were Dr. Lachman's records; however, Lowe began seeing Dr. Lachman because she was dissatisfied with the treatment she received at CED Mental Health Center. (Tr. at 46). But even the treatment notes from CED Mental Health Center contain no evidence to support the extreme limitations Dr. Lachman described. Lowe does not point to, and the court

cannot locate, any treatment notes that describe events from which someone could conclude Lowe poses a safety risk, cannot interact with peers or authority figures, or cannot maintain concentration.

For the VE's testimony to be considered substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). An ALJ is not, however, "required to include findings in the hypothetical that the ALJ ha[s] properly rejected as unsupported." *Crawford*, 363 F.3d at 1161. The ALJ properly explained her reasoning for rejecting as unsupported and inconsistent Dr. Bentley's and Dr. Lachman's opinions about Lowe's mental limitations. Therefore, the omission of the limitations suggested by those opinions is not a reason for remand. *See id.*

## IV. Conclusion

Upon review of the administrative record and considering all of Lowe's arguments, the court finds the Commissioner's decision is supported by substantial evidence and is in accord with applicable law. Accordingly, the Commissioner's decision is due to be affirmed.

A separate order will be entered.

**DONE** this 29th day of September, 2022.

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE